IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| SHEILA BROWN, et al. | ) ) | CIVIL ACTION NO. 99-20593 |
| v. | ) ) | |
| AMERICAN HOME PRODUCTS CORPORATION | ) ) ) | 2:16 MD 1203 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8753

Bartle, J.                                             January 5, 2012

Before the court is the motion of Wyeth[1] to enforce the
Diet Drug Nationwide Class Action Settlement Agreement
("Settlement Agreement") pursuant to Pretrial Order ("PTO") No.
2383 (Feb. 26, 2002).  In its motion, Wyeth seeks to enjoin
Carmen Cauthen and her husband Ricky Leon Cauthen from proceeding
with their lawsuit against Wyeth and Wyeth Pharmaceuticals, Inc.
in the Court of Common Pleas of Philadelphia County, Pennsylvania
captioned Carmen Cauthen and Ricky Leon Cauthen v. Wyeth, Inc.,
et al., June Term 2011, No. 00273.  Ms. Cauthen alleges that she
suffers from primary pulmonary hypertension ("PPH") as a result
of her ingestion of Diet Drugs.

---

1.  Prior to March 11, 2002, Wyeth was known as American Home
Products Corporation.

I.

In PTO No. 1415, this court approved the Settlement
Agreement.  Paragraph 7 of PTO No. 1415 provides:

> The court hereby bars and enjoins all class
> members who have not, or do not, timely and
> properly exercise an Initial, Intermediate,
> Back-End or Financial Insecurity Opt-Out
> right from asserting, and/or continuing to
> prosecute against [Wyeth] or any other
> Released Party any and all Settlement Claims
> which the class member had, has or may have
> in the future in any federal, state or
> territorial court.

PTO No. 1415 ¶ 7.

Under the Settlement Agreement, PPH is excluded from
the definition of Settled Claims, and therefore PPH claims are
not subject to the release and bar provisions of the Settlement
Agreement.  Settlement Agreement § VII.B.  The definition of PPH
under the terms of the Settlement Agreement, however, is
rigorous.  Plaintiffs claiming a diagnosis of PPH must satisfy a
three-part definition.  Only the second prong of the definition
is in controversy here.  There must be:

> Medical records which demonstrate that the
> following conditions have been excluded by
> the following results:
>
> . . . .
>
> (c)  Pulmonary function tests
>      demonstrating the absence of
>      obstructive lung disease ($FEV_1/FVC$
>      > 50% of predicted) and the absence
>      of greater than mild restrictive
>      lung disease (total lung capacity
>      > 60% of predicted at rest) . . . .

Settlement Agreement § I.46.a.(2)(c).

We previously have stated that PTO No. 1415 requires "this court to decide if there is a genuine issue of material fact as to whether plaintiff suffers from PPH. If no such issue exists, this court will enjoin the plaintiff from going forward. Otherwise, it is a matter for the trial court." PTO No. 3699 at 4 (July 6, 2004).

II.

In the present motion, Wyeth asserts that Ms. Cauthen cannot meet Part 2(c) of the PPH definition because her medical records demonstrate that she suffers from greater than mild restrictive lung disease. Wyeth references the results of her pulmonary function test performed on April 28, 2009. The Pulmonary Consultation Note identifies a total lung capacity of 56%. To satisfy Part 2(c) of the PHH definition, a claimant must have a total lung capacity of 60% or greater.

Ms. Cauthen does not dispute the results of the April 28, 2009 pulmonary function test. Instead, she relies on the declaration of Terry Fortin, M.D., who opines that Ms. Cauthen suffers from PPH secondary to her use of Diet Drugs. Dr. Fortin explains that the machines used to determine lung function base their calculations on pre-programmed averages. She concludes that the difference between 56% and 60% is "clinically irrelevant" because Ms. Cauthen's actual total lung capacity, if used, would alter the result. Ms. Cauthen also relies upon three earlier decisions of this court, PTO No. 1415, PTO No. 3065, and PTO No. 3699.

-3-

III.

As stated above, the Settlement Agreement requires putative PPH plaintiffs to provide, among other things, medical records that exclude a number of identified conditions, including "pulmonary function tests demonstrating ... the absence of greater than mild restrictive lung disease (total lung capacity > 60% of predicted at rest) ...." Settlement Agreement § I.46.a.(2)(c). Ms. Cauthen simply cannot satisfy the definition of PPH set forth in the Settlement Agreement. As noted above, the only pulmonary function test on record establishes she has greater than mild restrictive lung disease, that is, a total lung capacity of 56%. She cannot meet Part 2(c) of the definition of PPH that requires her to have a total lung capacity greater than 60%.

The letter and declaration of Dr. Fortin do not change this result. As an initial matter, Dr. Fortin acknowledges that Ms. Cauthen's pulmonary function test demonstrated that Ms. Cauthen has a total lung capacity of 56%. Additionally, the definition of PPH in the Settlement Agreement expressly requires that a putative PPH plaintiff establish, through a pulmonary function test only, the absence of greater than mild restrictive lung disease. We must apply the Settlement Agreement as written. Thus, Dr. Fortin's letter and declaration are not relevant to determining whether Ms. Cauthen can satisfy Part 2(c) of the definition of PPH set forth in the Settlement Agreement.

The prior decisions cited by Ms. Cauthen are inapposite. First, in PTO No. 1415, Judge Bechtle certified and approved the nationwide settlement class as well as the Settlement Agreement entered into between the parties on November 19, 1999. He did not rule that a putative PPH plaintiff could proceed with a PPH claim without satisfying the PPH definition set forth in the Settlement Agreement. Second, PTO No. 3065 dealt with evidence admissible at trial on a PPH claim, not the threshold definition of PPH in the Settlement Agreement. Third, in PTO No. 3699, we determined that a putative PPH plaintiff could proceed with her PPH claim where there was conflicting evidence of whether the class member had a normal pulmonary artery pressure greater than or equal to 15 mm HG as required by § I.46.a.(1)(a) of the Settlement Agreement. Here, Ms. Cauthen has not presented a pulmonary function test as required by the Settlement Agreement to support her argument that she does not have greater than mild restrictive lung disease. Thus, she has not come forward with any conflicting evidence which would allow her to proceed to trial.

For the foregoing reasons, Wyeth's motion to enforce the Settlement Agreement will be granted.