IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION NO. 99-20593 2:16 MD 1203 |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8154

Bartle, J.                                      January 5, 2012

Before the court is the motion of Eva J. Burgess ("Ms. Burgess" or "Claimant") to process her claim for Category Two benefits pursuant to the Seventh Amendment to the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.[1]

I.

The facts giving rise to these motions are not in dispute. On or before May 3, 2003, the date by which claimants were required to register for benefits under the Settlement Agreement, Ms. Burgess submitted a Blue Form to the AHP Settlement Trust ("Trust"). Although Ms. Burgess signed the Form in two different places, she did not sign it in all places

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

required. Significantly, she did not sign the section of the Form which included a release of settled claims and covenant not to sue. She also did not sign the "Declaration under Penalty of Perjury" to certify that the information provided in the Blue Form was true and correct.

On October 24, 2005, the Trust wrote counsel for Ms. Burgess to advise that she as well as a number of other claimants were not registered for benefits. On October 17, 2006, counsel for Ms. Burgess sent a letter to the Trust "in response to any and all deficiencies for 'Category 2 Benefits' and/or 'Deficiency Notice(s) for Fund A Audit' issued by the AHP Trust prior to the date of this letter for any of these same above-named diet drug recipients," including Ms. Burgess. The submission, however, did not include an amended Blue Form. It was not until January 5, 2010 that Ms. Burgess submitted a fully completed Blue Form, which she signed as required. On January 14, 2010, the Trust advised counsel for Ms. Burgess that she had not timely registered for benefits.

II.

Ms. Burgess first asserts that her failure to sign the original Blue Form in all required places is of no consequence. She maintains that the court should determine that she timely registered for benefits and permit her to file an amended Blue Form. In support, Ms. Burgess references Section VI.C.2.a. of the Settlement Agreement, which merely states that a claimant must register for benefits by submitting a "signed" Blue Form.

-2-

She also points to § III.A.2.a. of the Seventh Amendment, which provides that Category Two includes Diet Drug Recipients who "presently have a good faith belief that they timely registered for benefits under the Settlement Agreement and are determined by the Court to have been timely registered for benefits under the terms of the Settlement Agreement as it existed before the Seventh Amendment." Seventh Amendment § III.A.2.a. Ms. Burgess contends she had a good faith belief that she timely registered because she submitted a Blue Form on or before May 3, 2003 and § VI.C.2.b. of the Settlement Agreement permits a claimant to amend a previously submitted, incomplete Blue Form.

Finally, Ms. Burgess asserts that the Trust should not be permitted to reject her claim based solely on an "out of time" argument without demonstrating prejudice. According to Ms. Burgess, the Trust cannot show any prejudice because she submitted a Blue Form before May 3, 2003 and submitted claims for Category Two benefits in October, 2006.[2]

III.

The Settlement Agreement and the Seventh Amendment provide that, to be eligible for benefits, a claimant must have registered on or before May 3, 2003. To receive these benefits under the Settlement Agreement, claimants are required to release

---

2. Ms. Burgess also filed a motion for leave to file a reply brief to the Trust's response. The reply brief, which is attached to her motion as an exhibit, repeats the arguments made in her original submission. We will grant this motion and permit Claimant to file her reply brief.

Wyeth and others from all settled claims. To that end, the Blue Form contains a detailed "**CONDITIONAL RELEASE OF SETTLED CLAIMS AND COVENANT NOT TO SUE.**" The paragraph containing the conditional release concludes with the following sentence in bold letters: "**I, THE UNDERSIGNED, HAVE CAREFULLY READ (OR HAVE HAD READ TO ME) THIS RELEASE AND COVENANT NOT TO SUE. I, THE UNDERSIGNED, BELIEVE THAT I UNDERSTAND THE TERMS OF IT, AND AGREE TO BE BOUND BY IT.**"

Following this paragraph, the Blue Form contains a "**Declaration under Penalty of Perjury.**" This declaration provides:

> The persons signing below acknowledge and understand that this form is an official document sanctioned by the Court that presides over the Diet Drug Settlement, and submitting it to the Claims Administrators is equivalent to filing it with a court. Each declares under penalty of perjury that all of the information provided in this form is true and correct to the best of his/her knowledge, information and belief.

Immediately following these two paragraphs is a signature line, under which is printed "Signature of Diet Drug Recipient, if Living" and "Date." Notably, this is the only line on the form where the signature of the claimant is required.

We disagree with Claimant that a signature anywhere on the Blue Form satisfies the requirements for registration. We previously have noted the importance that a claimant sign the Blue Form under penalty of perjury as an acknowledgment of the conditional release. See Pretrial Order ("PTO") No. 3253 at 6

-4-

(Feb. 12, 2004). We observed, "The lack of a drug recipient's signature is a material omission, not a mere technicality." Id. There is no practical difference in failing to sign the Blue Form at all and signing the Blue Form on a page prior to the conditional release and declaration under penalty of perjury language.

As discussed above, Claimant also maintains that this court should find that she timely registered for benefits under the terms of the Seventh Amendment to the Settlement Agreement, which includes claimants who "presently have a good faith belief that they timely registered for benefits under the Settlement Agreement." Seventh Amendment § III.A.2.a. We reject this argument. The Trust notified Claimant's counsel in October, 2005 that it did not consider Ms. Burgess to be registered for benefits. Notwithstanding this notification, Ms. Burgess did not take any step to perfect her registration until filing this motion over four years later in February, 2010. We therefore find that Ms. Burgess did not register for benefits as required by the Settlement Agreement and the Seventh Amendment.

As Ms. Burgess did not register for benefits on or before May 3, 2003, she may only be permitted to register now if her failure to meet the deadline was due to "excusable neglect." In In re Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315, 323 (3d Cir. 2001) ("Bone Screw"), our Court of Appeals reiterated the Supreme Court's analysis of excusable neglect as set forth in Pioneer Investment Services Co. v. Brunswick

Associates Ltd. Partnership, 507 U.S. 380 (1993) ("Pioneer"). Four factors should be evaluated when deciding whether excusable neglect exists: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer, 507 U.S. at 395; Bone Screw, 246 F.3d at 322-23.

Under the first prong, we must consider the danger of prejudice to Wyeth should an extension be granted. We previously have recognized that the finality provided to Wyeth, the Trust, and other Class Members by the Settlement Agreement has been of paramount importance throughout the administration of the Settlement Agreement. See, e.g., PTO No. 7530 at 6 (Nov. 26, 2007). If Ms. Burgess were the only claimant who sought leave to register for benefits out of time, perhaps there would be little danger of prejudicing Wyeth or the Trust. She, however, is not. We have observed, "Although admission of any particular claimant may not in itself cause a substantial drain on the Trust, allowing this claimant to escape the firm deadlines set forth in the Settlement Agreement ... will surely encourage others to seek the same relief." PTO No. 3923 at 3 (Sept. 10, 2004); see also PTO No. 3253.

Second, we must consider the length of the delay in meeting the relevant deadline. The deadline to register for benefits was not arbitrary. It was set to give Class Members

ample time to collect the required paperwork and complete and submit the necessary forms. Although Ms. Burgess received notification from the Trust on October 24, 2005 that she was not registered for benefits, she waited until February 16, 2010, over four years later, to file the instant motion. This is a significant delay. To allow Claimant this lengthy extension would undermine the finality of the Settlement Agreement and open the door to similarly situated Class Members who presently are time-barred.

Third, we must evaluate the reasons for the delay. Ms. Burgess does not attempt to explain the delay in filing the instant motion or submitting an appropriately completed Blue Form.

Finally, Ms. Burgess has not established that she acted in good faith. After her counsel was advised in October, 2005 of the deficiencies in her Blue Form, she did nothing until January, 2010.

The danger of prejudice to Wyeth and the Trust, the length of the delay and its potential effect on judicial proceedings, and the lack of reasons for the delay weigh heavily in favor of finding that Claimant's actions do not constitute excusable neglect.

For the foregoing reasons, the motion of Claimant Eva J. Burgess to process her claims for Category Two benefits will be denied.[3]

---

3. Ms. Burgess has filed a subsequent motion to grant her motion as uncontested or, in the alternative, for an oral hearing. As the Trust responded to Claimant's motion and no issue exists preventing disposition of the motion on the full briefing of the parties, we will deny this motion.

-8-