IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: RICHARD FOSTER and CAROLYN FOSTER v. WYETH, et al. | : : : : : : : : : | CIVIL ACTION NO. 99-20593 |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9051

Bartle, J.                                                April 16, 2013

Plaintiffs Richard Foster ("Foster") and Carolyn Foster, his wife, have filed a lawsuit in the Court of Common Pleas of Philadelphia County against defendants Wyeth Pharmaceuticals Inc., Wyeth LLC, and Pfizer, Inc. (collectively "Wyeth"). See Foster v. Wyeth Pharmaceuticals, Inc., C.P. Phila., Dec. Term, 2012, No. 3664. Foster alleges that he suffers from primary pulmonary hypertension ("PPH") as a result of ingesting Wyeth's diet drugs known as Pondimin (fenfluramine) and Phentermine. His wife avers a derivative claim.

Pending before the court is Wyeth's motion to enjoin plaintiff from proceeding with his state court action pursuant to Pretrial Order ("PTO") No. 2383 on the ground that he is a class

member in Brown v. American Home Products Corp., MDL No. 1203, and is barred by the Settlement Agreement approved by this court from litigating his pending claim.

This court approved the Settlement Agreement of this massive and complex diet drug class action in PTO No. 1415, In re: Diet Drugs, No. 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000). With certain exceptions, Foster, as a class member, released all claims he had or may have against Wyeth for his use of diet drugs. The exception which is the focus of the pending motion allows class members to sue Wyeth in the tort system if they suffer from PPH, a fatal disease which can be caused by the use of Wyeth's diet drugs. Settlement Agreement § VII.B.

This court set forth in PTO No. 2383 the procedures for determining whether a class member who claims a PPH diagnosis qualifies as a threshold matter under the legal definition of this application, and thus whether he or she is permitted to maintain a lawsuit against Wyeth alleging PPH. PTO No. 2383 states that a putative PPH plaintiff must demonstrate full compliance with all three parts of the definition of PPH as set forth in the Settlement Agreement in order to be able to proceed with his or her lawsuit.

As explained in PTO No. 2623, "This court has the job of overseeing the settlement of this massive class action, particularly to insure that the Settlement Agreement, as approved by the court, is uniformly interpreted and properly enforced." Pursuant to that role, this court must first make a determination

as to whether there exists at least a genuine dispute of material fact that plaintiff suffers from PPH as defined in the Settlement Agreement. If plaintiff has not come forward with evidence to create such a genuine dispute, the court will enjoin him from proceeding with his lawsuit. If on the other hand plaintiff presents such evidence, the case may proceed to trial where it will be determined whether Wyeth is liable. See PTO No. 1415; PTO No. 3699.

The portion of the definition of PPH in the Settlement Agreement which is relevant here requires that "conditions known to cause pulmonary hypertension including ... familial causes, have been ruled out by a Board-Certified Cardiologist or Board-Certified Pulmonologist as the cause of the person's pulmonary hypertension." (Emphasis added). See Settlement Agreement § I.46a(3). Wyeth contends that plaintiff has not produced any evidence excluding familial causes and therefore the court must enjoin him from pursuing his state court lawsuit.

It turns out that plaintiff was adopted. According to the initial pulmonary medicine consultation by Rajish Harrybesson M.D., Foster "does not know his biologic family history." While there are references in plaintiff's medical history that he suffers from "Idiopathic PAH,"[1] that is, pulmonary hypertension of unknown cause, there is nowhere in the record where a Board-Certified Cardiologist or a Board-Certified Pulmonologist

---

1. Primary arterial hypertension ("PAH") is a term now used as synonymous with primary pulmonary hypertension ("PPH").

-3-

excludes "familial causes" as a cause of plaintiff's PPH. The physicians who have examined him have not and cannot rule out familial causes because under the circumstances they could only speculate about his family history. No information about one's family history of PPH does not equate to no family history of PPH.

Wyeth notes that plaintiff has not had a genetic blood test for what is known as a "BMPR2 mutation." According to Wyeth, such testing can be used to "confirm the diagnosis of familial PAH." Plaintiff counters that the presence of a BMPR2 gene does not prove the existence of such disease and that the absence of the gene does not rule out its presence. Plaintiff adds that 80% to 90% of people who inherit a BMPR2 mutation will never develop the disease. Wyeth responds that "fully 70% of individuals diagnosed with familial PAH carry the mutation." Both sides cite medical literature in support of their respective positions.

We cannot resolve what a BMPR2 test would show about plaintiff and what inferences may be drawn. The plaintiff has not undertaken the test. While it is unfortunate that plaintiff because of his adoption faces an evidentiary hurdle not of his own making, the fact remains that he can point to nothing in the record before the court to rule out familial causes. This exclusion is a clear prerequisite under the Settlement Agreement in order to proceed with a lawsuit claiming the existence of PPH. The court must read the Settlement Agreement according to basic

contract principles and give the words their plain meaning. In re: Diet Drugs ("Cauthen"), ___ F.3d ___, 2013 WL 210195 (3d Cir. Jan. 28, 2013).

The plaintiff attempts to fill the void in his proof with a declaration of Lewis Rubin, M.D., a specialist in the field of pulmonary hypertension. He references in his declaration a treatise, 99 Primary Pulmonary Hypertension, which he co-authored and which is cited in footnotes to the definition of Primary Pulmonary Hypertension in § I.46a(3) of the Settlement Agreement. In his declaration, he first discusses the BMPR2 mutation. He then concludes, "Based on its source, which I wrote, I do not believe that the Settlement Agreement definition of PPH could possibly require the exclusion of inherited cause where a patient does not know his family history based on the scientific facts cited above." While the authors of the Settlement Agreement have referenced the above-mentioned treatise, Dr. Rubin did not write the definition of PPH in the Settlement Agreement or decide what a claimant would have to exclude in order to be permitted to sue for PPH. Suffice it to say that his belief, which is inconsistent with the specific terms of the Settlement Agreement, carries no weight. See Bohler-Uddeholm Am. Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001).

The situation besetting plaintiff is not unique in the administration of the Settlement Agreement. There have been times throughout the years when a claimant, through no fault of

his or her own, has been unable to obtain various medical or pharmacy records and thus has been precluded from obtaining certain benefits. This has not previously and cannot now be a basis for reading a provision out of the Settlement Agreement which was negotiated at arm's length and approved by this court after extensive hearings. See PTO No. 1415.

Regrettably, at this time, it is pure speculation whether both of plaintiff's biological parents suffered from PPH or whether no such medical history exists among any of his ancestors or whether the facts fall somewhere in-between. Since plaintiff has not met his burden to come forward with any evidence that familial causes have been ruled out by a Board-Certified Cardiologist or Board-Certified Pulmonologist, the court will enjoin plaintiff Richard Foster from proceeding with his lawsuit against Wyeth.