IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ | : | MDL DOCKET NO. 1203 |
| FENFLURAMINE/DEXFENFLURAMINE) | : | |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS | : | |
| CORPORATION | : | NO. 99-20593 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | 2:15 MD 1203 |
| Claimant: Janice E. Madkins | : | |
| Claim No.: 183/00 8266896 | : | 2:16 MD 1203 |
| | : | |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9150**

Bartle, J.                                    September 26, 2013

          Janice E. Madkins ("Ms. Madkins" or "claimant"), a

class member under the Diet Drug Nationwide Class Action

Settlement Agreement ("Settlement Agreement") with Wyeth, Inc.,[1]

seeks benefits from the AHP Settlement Trust ("Trust").  Under

the Settlement Agreement, Matrix Compensation Benefits ("Matrix

Benefits") are awarded to compensate claimants for medical

conditions caused by Pondimin® or Redux™ ("Diet Drugs").[2]

---

1.    Prior to March 11, 2002, Wyeth was American Home Products
Corporation.  In 2009, Pfizer, Inc. acquired Wyeth.

2.  Matrix Benefits are paid according to two benefit matrices
(Matrix "A" and Matrix "B"), which generally classify claimants
for compensation purposes based upon the severity of their
                                              (continued...)

Claimant submitted to the Trust a Blue Form signed on April 17, 2003. In that form, Ms. Madkins represented that she ingested both Pondimin® and Redux™ for 61 days or more and that these Diet Drugs were dispensed by Dr. Terry McDermott and Dr. Don Chumley of the Broadway Clinic in Oklahoma City, OK. Part II of claimant's Green Form asserted conditions that, if confirmed at audit, would support an award of Matrix A-1, Level II benefits. Following audit, the Trust determined that claimant was not entitled to Matrix Benefits based on the findings of the auditing cardiologist and her failure to document Diet Drug use. The Trust determined that claimant's Contest materials also failed to establish entitlement to Matrix Benefits. The Trust issued a Final Post-Audit Determination on December 13, 2007.

Ms. Madkins claims that she ingested Diet Drugs for 61 days or more and is thus entitled to Matrix A-1 benefits. As a result, claimant filed an appeal for arbitration, and the court

2. (...continued)
medical conditions, their ages when diagnosed, and the presence of other medical conditions that also may have caused or contributed to a claimant's valvular heart disease. See Settlement Agreement, §§ IV.B.2.b. and IV.B.2.d.(1)-(2). Matrix A-1 describes the compensation available to Diet Drug Recipients with serious valvular heart disease who took the drugs for 61 days or longer and who did not have any of the alternative causes of the disease that made the B matrices applicable. In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious valvular heart disease who were registered as having only mild mitral regurgitation by the close of the Screening Period or who took the drugs for 60 days or less or who had factors that would make it difficult for them to prove that their heart disease was caused solely by the use of these Diet Drugs.

referred the matter to an Arbitrator.[3]  See Settlement Agreement,
§ IV.C.4.h-i.  The Arbitrator issued a Report and Award on
December 28, 2012, affirming the Trust's determination that Ms.
Madkins had not established that she had ingested Diet Drugs.

Claimant has now appealed to this court as permitted
under the Settlement Agreement.  See id.  We apply a clearly
erroneous standard of review to the Arbitrator's findings of fact
and conduct a plenary review of conclusions of law.  First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-49 (1995).
The decision of this court is final and binding.  See Settlement
Agreement, § VI.C.4.1.

On appeal, Ms. Madkins asserts that she has submitted
sufficient proof under the Settlement Agreement to establish that
she ingested Diet Drugs for 61 days or more.  The relevant
provision provides:

> In order to complete the submission of a
> Claim and to qualify for any benefits under
> the Settlement Agreement, each Class Member
> must submit documentary proof to the Trustees
> and/or Claims Administrator(s) of the period
> of time for which the Diet Drugs Pondimin®
> and/or Redux™ were prescribed and dispensed
> to the Diet Drug Recipient who is the subject
> of the Claim.  This proof must include one of
> the following:
>
> > (1)  If the diet drug was dispensed
> > by a pharmacy, the identity of each

_____

3.  Ms. Madkins also claims she had moderate mitral
regurgitation, and thus is entitled to Level II benefits.  As a
result, claimant disputed this determination of the Trust to show
cause.  Given our disposition with respect to whether Ms. Madkins
submitted sufficient proof of ingestion of Diet Drugs, the order
to show cause regarding her claim is moot.

pharmacy that dispensed Diet Drugs
to the Diet Drug Recipient,
including its name, address, and
telephone number, and a copy of the
prescription dispensing record(s)
from each pharmacy, which should
include the medication name,
quantity, frequency, dosage, and
number of refills prescribed,
prescribing physician's name,
assigned prescription number,
original fill date and each
subsequent refill date; or,

(2)   If the diet drug was dispensed
directly by a physician or weight
loss clinic, or the pharmacy
record(s) is unobtainable, the
identity of each prescribing
physician, including the
prescribing physician's name,
address, and telephone number and a
copy of the medical record(s)
prescribing or dispensing the diet
drug(s).   The medical record(s)
must include records which identify
the Diet Drug Recipient, the Diet
Drug name, the date(s) prescribed,
the dosage, and duration the drug
was prescribed or dispensed;

(3)   If the pharmacy records and
medical records are unobtainable,
an affidavit under penalty of
perjury from the prescribing
physician or dispensing pharmacy
identifying the Diet Drug
Recipient, the drug(s) prescribed
or dispensed, the date(s),
quantity, frequency, dosage and
number of prescriptions or refills
of the Diet Drug(s).

See id., § VI.C.2.d.   The burden of proving Diet Drug ingestion

remains with the claimant.   See Pretrial Order ("PTO") No. 7779

at 6 (Apr. 15, 2008).

-4-

Here, Ms. Madkins has submitted medical records from the Broadway Clinic for the time period August 7, 1995 through June 15, 1998. However, these records make no reference to the Diet Drugs Pondimin® or Redux™. Instead, the records reference only Fastin and Phenodrex, neither of which is a Diet Drugs.

Ms. Madkins also submitted a Blue Form Declaration dated May 12, 2004, with a supporting affidavit signed by Dr. Wallace B. McLeod, III. Dr. McLeod declares in his affidavit that he did not dispense Pondimin or Redux to claimant but that he has access to her pharmacy records from the Broadway Clinic. While he states that Pondimin was dispensed to her from August 1995 to December 1995, he notes that neither the dosage nor the number of pills dispensed was documented. He also identifies Dr. Don Chumley and Dr. Terry McDermott, who are no longer employed at the Broadway Clinic and are unavailable to fill out the Blue Form Declaration, as having dispensed Pondimin® and/or Redux™ to claimant. As the Arbitrator noted, the Declaration of Dr. McLeod is neither a pharmacy record documenting the use of Diet Drugs, nor is it a medical record prescribing or dispensing the Diet Drugs. Furthermore, it is not an affidavit from the prescribing physician or dispensing pharmacy. The Arbitrator also is correct that the Blue Form Declaration conflicts with contemporaneous medical records submitted by Ms. Madkins, which reference only Fastin and Phenodrex.

In further support of her claim Ms. Madkins presented a letter from Emili Ruiz of the Broadway Clinic dated March 15,

2007, in which Ms. Ruiz writes that Dr. Don Chumley was the prescribing physician for Ms. Madkins, that the Broadway Clinic dispensed "phen-phen" and that Dr. Chumley is deceased. Again, Ms. Ruiz's letter is not a pharmacy record, a medical record, or an affidavit from the prescribing physician or dispensing pharmacy documenting the drug prescribed.

Finally, Ms. Madkins has provided a Blue Form Declaration dated August 23, 2007 from Dr. Matthew Haag of the Broadway Clinic. Dr. Haag specifies in his Declaration that he is the physician who prescribed Pondimin® and/or Redux™ to Ms. Madkins. The Declaration reflects that he prescribed phentermine and fenfluramine from October 30, 1995 to July 10, 1997 to claimant. This Declaration, however, conflicts with the contemporaneous medical records submitted by claimant, which reference only Fastin and Phenodrex, not the Diet Drugs Pondimin® or Redux™. In addition, the Arbitrator found that as of December 13, 2007, the website of the Broadway Clinic described Dr. Haag as having been graduated from medical school in 2000, almost 3 years after the last date he stated in his Declaration that he allegedly prescribed Diet Drugs to Ms. Madkins.

We conclude that the Arbitrator's determination was not clearly erroneous as to his findings of fact, and he did not err as to his conclusions of law. The Report and Award of the Arbitrator will be affirmed.